IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANINE A. BILYEU | ) | |
| | ) | |
| v. | ) | NO. 3:09-0909 |
| | ) | |
| THE METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE, et al. | ) | |

TO: Honorable Kevin H. Sharp, District Judge

# REPORT AND RECOMENDATION

By Order entered October 21, 2009 (Docket Entry No. 12), this action was referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, for entry of a scheduling order, decision on all pretrial, nondispositive motions, and a report and recommendation on any dispositive motions.

Presently pending before the Court are the Motion for Summary Judgment filed by the Metropolitan Government of Nashville and Davidson County, Tennessee, Gene Foster, and June Keel (Docket Entry No. 98) and the Motion for Summary Judgment filed by the Plaintiff (Docket Entry No. 100). Also before the Court are the parties' respective responses and replies. See Docket Entry Nos. 112-114, 119-121, and 132-135. Set out below is the Court's recommendation for disposition of the motions.

Also pending are the Plaintiff's motion for a permanent injunction (Docket Entry No. 143),[1] and several other motions, all but one of which were filed by the Plaintiff, and all of which have been denied as moot by separately entered order.

## I. BACKGROUND

The Plaintiff is a former employee of the Metropolitan Nashville Public Schools ("MNPS"). She was employed as a school teacher beginning in 1997, and continuing through January 2004. On September 29, 2009, she filed the instant action pro se against MNPS; the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"); Dr. Pedro Garcia, the former MNPS Director of Schools; Dr. June Keel ("Keel"), the MNPS Assistant Superintendent, Director of Human Resources; and Dr. Gene Foster ("Foster"),[2] the former MNPS Assistant Director of Human Resources Grades 9-12.[3] The Plaintiff asserted claims under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Tennessee Human Rights Act, Tenn. Code. Ann. §§ 4-21-101 et seq. ("THRA"), the Tennessee Public Protection Act, Tenn. Code. Ann. § 50-1-304 ("TPPA"), and

---

[1] Although the Plaintiff styles her motion as a motion for a permanent injunction, it is clear that she seeks a preliminary injunction.

[2] On July 26, 2011, the defendants filed a suggestion of the death of Gene Foster. See Docket Entry No. 122.

[3] Although the Plaintiff also included "Nashville Teaching Fellows" and "Teach For America, Inc." in the caption of her First Amended Complaint, the Court found they were not parties to the action. See Order entered June 23, 2010 (Docket Entry No. 62), and Report and Recommendation (Docket Entry No. 42), at 2, n.2. The Court also denied the plaintiff's motion to add current Metro Mayor Karl Dean and current MNPS Director Jesse Register as defendants to the action. See Orders entered August 16, 2011 (Docket Entry No. 127), June 23, 2010 (Docket Entry No. 62), and April 28, 2010 (Docket Entry No. 41).

under the First and Fourteenth Amendments. See Complaint (Docket Entry No. 1) and First Amended Complaint (Docket Entry No. 20).

The Plaintiff's claims are based on events surrounding her unsuccessful attempt to be re-hired for a teaching position with MNPS during the summer of 2008, when she sought employment on eight occasions but was not hired each time. She alleges that MNPS's refusal to rehire her was an act of retaliation against her because of two prior lawsuits she pursued against Metro and MNPS.[4] She also alleges that she was discriminated against because of her age when younger, less qualified applicants were hired instead of her. Additionally, the Plaintiff asserts that incorrect and/or false information is contained in her MNPS employment file and is given to prospective employers, that she has not been provided with full access to certain MNPS records, that there is an ongoing conspiracy to prevent her from being re-hired, and that she was not provided with due process when her employment ended in January 2004. See First Amended Complaint (Docket Entry No. 20).

By Order entered April 1, 2010, the Court dismissed MNPS from the action, dismissed the Plaintiff's TPPA claims and her claims under the First and Fourteenth Amendment. See Docket Entry No. 29. The Court subsequently permitted the Plaintiff to amend her pleadings to specifically include claims that she was discriminated against because of her age under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). See Order Entered June 23, 2010 (Docket Entry No. 62), at 7.

---

[4] Bilyeu v. City of Nashville, et al., No. 3:01-1553, was dismissed after a bench trial in February 2004, and the judgment was affirmed upon appeal. See Bilyeu v. Metropolitan Government of Nashville and Davidson County, 136 Fed.Appx. 786, 2005 WL 1385923 (6th Cir. 2005) ("Bilyeu I"). Bilyeu v. Metropolitan Government of Nashville and Davidson County, Tennessee, No. 3:05-0579 ("Bilyeu II"), was dismissed in August 2007, after the parties entered into a stipulation of dismissal with prejudice. For a more complete synopsis of the two prior lawsuits, see the Report and Recommendation entered March 10, 2010 (Docket Entry No. 24).

## II. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants assert that the Plaintiff had a documented history of performance problems as a teacher with MNPS prior to leaving employment with MNPS, several of which were noted by this Court in the Memorandum and Order dismissing her 2001 federal employment discrimination lawsuit against Metro ("Bilyeu I") (Docket Entry No. 94-1). The Defendants state that, because of her past performance problems as a teacher, in April 2006, Defendants Keel and Foster decided that the Plaintiff should be given the status of "Do Not Interview" with respect to any applications she submitted for employment with MNPS. The Defendants contend that this status has remained unchanged and renders the Plaintiff ineligible for an interview or for employment with the MNPS.

Based upon these facts, the Defendants argue that the Plaintiff cannot establish a prima facie case of employment discrimination or unlawful retaliation under the ADEA, Title VII, or the THRA. Furthermore, they assert that the plaintiff's prior performance issues constitute legitimate, nondiscriminatory reasons supporting the decision not to interview or re-hire the Plaintiff for employment with the MNPS and negate any conclusion that the decision not to hire the plaintiff was a pretext for discrimination or retaliation. The Defendants also contend that the Plaintiff's lawsuit is untimely because the Plaintiff filed her action more than 90 days after the EEOC mailed her the right to sue letter. Finally, the Defendants contend the claims raised by the Plaintiff are barred by the terms of a 2007 Settlement Agreement entered into between the parties which settled Bilyeu II and two other lawsuits the Plaintiff had filed against Metro in state court and in which the Plaintiff agreed to give up her right to bring any claims against Metro for any action or inaction occurring before July 30, 2007, the effective date of the Settlement Agreement.

The Defendants support their motion with the Affidavit of Gene Foster (Docket Entry No. 95), the affidavit of June Keel (Docket Entry No. 96), the declaration of June Keel (Docket Entry No. 97),

excerpts from depositions of the plaintiff (Docket Entry Nos. 94-2, 94-3, and 94-4), with filings made in the plaintiff's prior lawsuits (Docket Entry Nos. 94-1, 94-5 - 94-7, 94-9, and 94-10), and with a copy of the 1997 Settlement Agreement (Docket Entry No. 94-8).

### III. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In a 29 page Memorandum, the Plaintiff recounts the events of her more than a decade long legal embroilment with MNPS and related individuals. Relying on numerous pages of documents, records, exhibits, depositions, and case law, see Docket Entry No. 105, the Plaintiff contends that "the preponderance of the evidence and the weight of the additional claims asserted in this instant matter" justify the award of summary judgment in her favor on her Title VII, THRA, and ADEA claims. See Docket Entry No. 101, at 27.

### IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court

must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## V. ANALYSIS

### A. Timeliness of the Action

A plaintiff bringing claims under Title VII or the ADEA must ordinarily file her lawsuit within ninety days after receiving the right-to-sue letter from the EEOC. See 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); Seay v. Tennessee Valley Auth., 339 F.3d 454, 469 (6th Cir. 2003); Peete v. American Standard Graphic, 885 F.2d 331, 331-32 (6th Cir. 1989). However, actual receipt of a right-to-sue letter by the plaintiff is not required to start the 90 day limitations period. See Banks v. Rockwell Int'l N. Am. Aircraft Operations, 855 F.2d 324, 326 (6th Cir. 1988); Hunter v. Stephenson Roofing, Inc., 790 F.2d 472, 474-75 (6th Cir. 1986). Within the Sixth Circuit, a plaintiff is presumed to have received delivery of the right-to-sue letter within five days following the EEOC's mailing of the letter. Graham–Humphreys v. Memphis Brooks Museum of Art. Inc., 209 F.3d 552, 557-58 (6th Cir. 2000); Banks, supra. Thus, unless a plaintiff rebuts this presumption with proof that she did not receive the right-to-sue letter within the five days following the mailing of the letter, the 90 day period will begin to run on the fifth day following mailing of the letter. Graham-Humphreys, 209 F.3d at 557.

The right-to-sue letter from the EEOC was mailed to the Plaintiff on June 25, 2009. See Docket Entry No. 1, at 13. Although the Plaintiff does not address the timeliness argument raised by the defendants in her Response Memorandum (Docket Entry No. 121), she does assert in her Response to the Defendants' Statement of Undisputed Facts that she "received the Notice of Right to Sue, on or about July 1, 2009, which would have been a holiday weekend and necessarily extended her time to file. Therefore, she filed timely according to the 90 [day] limitation." See Docket Entry No. 120, at 21, ¶ 31. The Defendants reply that the Plaintiff's assertion that she received the right-to-sue letter "on or about July 1, 2009," is irrelevant because notice of the right-to-sue letter was presumptively

7

established on June 30, 2009, the fifth day after the letter was mailed, and that this presumptive notice triggered the running of the statute of limitations. See Reply (Docket Entry No. 133), at 2-4.[5]

The Defendants' argument that actual receipt of the right-to-sue letter is not relevant under the Graham-Humphreys line of case is an overstatement of the five day presumptive receipt rule. Indeed, in Graham-Humphreys, the Sixth Circuit Court of Appeals specifically noted that the rule is a rebuttable presumption:

> the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not receive notification within that period.

209 F.3d at 557. Nonetheless, the avenue for relief from application of the presumptive notice rule requires the Plaintiff to set forth proof that she did not receive actual notice within the five day period. The Plaintiff has not satisfied this burden with any type of supporting evidence. Furthermore, her own unsupported arguments offer contrary positions of when she received the right-to-sue letter. As noted above, in one of her filings she contends that she received the right-to-sue letter "on or about July 1, 2009," see Docket Entry No. 120, at 21, ¶ 31, yet in her Reply Brief to the Defendants' Response to her own Motion for Summary Judgment she contends that she received the right-to-sue letter "on or around June 30th [2009]." See Docket Entry No. 134, at 9. Given the lack of proof from the Plaintiff of when she received the right-to-sue letter, the Court finds that the presumptive receipt rule of Graham-Humphreys applies, and the Plaintiff shall be deemed to have received the right-to-sue letter on June 30, 2009. See Lacheta v. Madison Cnty. Hosp, 2009 WL 3515378 (S.D. Ohio Oct. 28,

---

[5] The Defendants also argue that the Plaintiff's contention that she received the right-to-sue letter on a "a holiday weekend" fails to provide her with any relief from the running of the applicable filing period. The Court agrees. July 1, 2009, was a Wednesday and was not a federal holiday or part of a holiday weekend.

2009) (five day presumption applied because plaintiff failed to offer proof in support of her assertion that she did not receive the right-to-sue letter); Ellington v. Consolidated Biscuit Co., 2008 WL 3914982 (E.D. Ky. Aug. 21, 2008) (plaintiff's contradictory and unsubstantiated evidence of when he received the right-to-sue letter failed to rebut the five day presumption rule); Carter v. Jack Daniel's Distillery, 2002 WL 32059015 (E.D. Tenn. Nov. 26, 2002) (plaintiff's unsubstantiated, self-serving affidavit failed to rebut the five day presumption rule and raise genuine issue of material fact precluding the entry of summary judgment).

Given the applicable five day presumption, the 90 day period within which the Plaintiff must have filed her lawsuit expired on September 28, 2009. However, the instant action was not filed until September 29, 2009, which is one day beyond this time limit. Thus, the Plaintiff's complaint is untimely and should be dismissed. A lawsuit is subject to dismissal as untimely, even if filed only a few days late, regardless of the resulting hardship to the plaintiff. See Graham-Humphreys, 209 F.3d at 561; Peete, 885 F.2d at 331-32; Adams v. Noble, 137 F.Supp.2d 1054, 1058 (S.D.Ohio 2001).

The Plaintiff asserts in her Reply Brief that she "noted her deadline as September 29, 2009," and that it would not be reasonable to think that she would have missed such a significant deadline. See Docket Entry No. 134, at 9. The Plaintiff's erroneous calculation of when the 90 day period expired is unfortunate, but this error does not excuse her untimely filing of the lawsuit. See McKibben v. Hamilton Cnty., 2000 WL 761879 (6th Cir. May 30, 2000) (untimely complaint not excused by plaintiff's one day miscalculation of the 90 day filing deadline). Federal courts must strictly enforce the 90 day limit absent circumstances justifying equitable tolling. See Baldwin Cnty. Welcome Center v. Brown, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); Graham-Humphreys, 209 F.3d at 557; Minnis v. McDonnell Douglas Technical Servs. Co., 162 F.Supp.2d 718, 729 (E.D. Mich. 2001). Typically, equitable tolling is available only when a litigant's failure to meet a

9

legally-mandated deadline, such as statute of limitations, unavoidably arose from circumstances beyond that litigant's control. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); Baldwin Cnty. Welcome Center, 466 U.S. at 151. Absent compelling equitable circumstances, a court should not extend a statute of limitations by even a single day. Graham-Humphreys, 209 F.3d at 561. The Sixth Circuit has identified five factors to consider when determining whether it is appropriate to apply the doctrine of equitable tolling to a statute of limitations: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendants; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing the claim. Id.; Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988). The Plaintiff has not shown that these factors favor equitable tolling, shown that her failure to timely file her lawsuit was due to a circumstance beyond her control, or shown any other compelling reason to apply equitable tolling to her case.

**B. THRA Claims**

There is no 90 day filing period for claims brought under the THRA as there is for claims brought under Title VII and the ADEA. Accordingly, the Plaintiff's failure to timely file her lawsuit within the 90 day time period does not require dismissal of her THRA claims.[6]

---

[6] The Defendants did not address any untimeliness of the Plaintiff's THRA claims, for which a one year state of limitations applies. Tenn. Code Ann. § 4-21-311(d). To the extent that the basis of the Plaintiff's THRA claims is the Defendants' failure to rehire the Plaintiff during the summer of 2008, it would appear that these claims would be time-barred since the Complaint was filed on September 29, 2009. However, to the extent that the Plaintiff is asserting claims arising after September 29, 2008, any such THRA claims would be timely filed.

However, upon the Court's dismissal of the Title VII and ADEA claims, the Court will no longer have original jurisdiction over any claims in the action. In such a circumstance, 28 U.S.C. § 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction over state law claims which would not otherwise be subject to review by the federal courts. The general rule that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well," was succinctly stated by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966), and has been routinely followed. See Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009); Thurman v. Daimler Chrysler, 397 F.3d 352, 359 (6th Cir. 2004);Weeks v. Portage County Exec. Offices, 235 F.3d 275, 279-80 (6th Cir. 2000); Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996); Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992); McMillion v. Metropolitan Gov't of Nashville and Davidson Cnty., 799 F.Supp.2d 821, 829 (M.D. Tenn. 2011); Williams v. City of Milan, Tenn., 654 F.Supp.2d 760, 767 (W.D. Tenn. 2009); Lacheta, supra; Clemons v. Ford Motor Co., 57 F.Supp.2d 469, 483 (M.D. Tenn. 1998) (declining supplemental jurisdiction over THRA claims upon the grant of summary judgment to the defendant on Title VII claims); Dobbs-Weinstein v. Vanderbilt Univ., 1 F.Supp.2d 783, 809 (M.D. Tenn. 1998) (declining supplemental jurisdiction over THRA claims upon the grant of summary judgment to the defendant on Title VII claims). The plaintiff's THRA claims should be determined by the state courts, and these claims should accordingly be dismissed without prejudice.

**RECOMMENDATION**

Based on the foregoing, the Court respectfully RECOMMENDS:

1) the Motion for Summary Judgment filed by the Metropolitan Government of Nashville and Davidson County, Tennessee, Gene Foster, and June Keel (Docket Entry No. 98) be GRANTED with respect to the Plaintiff's Title VII and ADEA claims on the ground that the action was not timely filed as to these claims and that the Title VII and ADEA claims be DISMISSED WITH PREJUDICE;

2) the Motion for Summary Judgment filed by the Metropolitan Government of Nashville and Davidson County, Tennessee, Gene Foster, and June Keel (Docket Entry No. 98) be DENIED as MOOT in all other respects and the Motion for Summary Judgment filed by the Plaintiff (Docket Entry No. 100) be DENIED as moot in light of the recommendation for dismissal of the Title VII and ADEA claims as untimely;[7]

3) the Plaintiff's claims brought under the THRA be DISMISSED WITHOUT PREJUDICE; and

4) the Plaintiff's motion for a permanent injunction (Docket Entry No. 143) be DENIED in light of the recommended dismissal of the plaintiff's federal claims, with leave to renew in any state court action.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver

---

[7] If the recommendation for dismissal of the Title VII and ADEA claims as untimely is rejected, the parties should be granted leave to reassert their arguments as to the merits of the Plaintiff's underlying claims.

of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge